**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INOLEX, INC. and INOLEX INVESTMENT CORP., <br><br> Plaintiffs, <br><br> v. <br><br> ACTERA INGREDIENTS, INC., <br><br> Defendant. | C.A. No. _____ <br><br> **Jury Trial Demanded** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Inolex, Inc. and Inolex Investment Corp. ("Inolex" or "Plaintiffs"), by and through their undersigned counsel, hereby allege against Defendant Actera Ingredients, Inc. ("Actera") as follows:

**THE NATURE OF THE ACTION**

1. This is an action for infringement of U.S. Patent Nos. 10,897,899 ("the '899 patent," attached hereto as Exhibit A) and 11,291,204 ("the '204 patent," attached hereto as Exhibit B) (together, "the Asserted Patents") arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

**THE PARTIES**

2. Inolex, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 601 Walnut Street, Suite 220, Philadelphia, PA 19106.

3. Inolex Investment Corp. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 103 Springer Building, 3411 Silverside Road, Wilmington, DE 19810. Inolex Investment Corp. is the assignee and owner of

the Asserted Patents and has the right to enforce (including for past infringement) each of the Asserted Patents.

4. Upon information and belief, defendant Actera Ingredients, Inc. ("Actera") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 66 Walker Lane, Newtown, PA 18940.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Actera because Actera is registered as a Corporation under the laws of the State of Delaware under file registration number 6576856.

7. This Court also has personal jurisdiction over Actera because Actera offers for sale, sells, and/or distributes its TeraStat™ N product, which is accused of infringing the Asserted Patents, in this judicial district.

8. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL BACKGROUND

9. Inolex, Inc. is a privately owned innovation company that was founded over 145 years ago and specializes in the development of sustainable ingredients for health, beauty, and wellness. Inolex, Inc. utilizes renewable feedstocks as the building blocks for naturally derived ingredients that are used in a wide range of personal care products.

10. Inolex is a leader in the development of ingredients for safe preservation and currently markets at least ten broad spectrum preservation systems under the Spectrastat™ brand, including four 100% naturally derived systems. Inolex's preservation products that are covered by at least one of the Asserted Patents include: Spectrastat™ CGE Natural MB (International

Nomenclature Cosmetic Ingredient ("INCI") Name: Caprylhydroxamic Acid (and) Caprylyl Glyceryl Ether (and) Propanediol); Spectrastat™ G2 Natural MB (INCI Name: Caprylhydroxamic Acid (and) Glyceryl Caprylate (and) Glycerin); Spectrastat™ PHL (INCI Name: Caprylhydroxamic Acid (and) 1,2-Hexanediol (and) Propanediol); Spectrastat™ OEL (INCI Name: Caprylhydroxamic Acid (and) Caprylyl Glycol (and) Ethylhexylglycerin (and) Propanediol); and Spectrastat™ OL (INCI Name: Caprylhydroxamic Acid (and) Caprylyl Glycol (and) Propanediol).

**U.S. Patent No. 10,897,899 B2**

11. U.S. Patent No. 10,897,899 B2 ("the '899 patent") is entitled "Preservatives for Cosmetic, Toiletry and Pharmaceutical Compositions," and was issued by the U.S. Patent and Trademark Office (the "PTO") to Inolex Investment Corp. on January 26, 2021. A copy of the '899 patent is attached to this Complaint as Exhibit A.

12. The PTO thoroughly examined the '899 patent, and it is currently in force and presumed valid. 35 U.S.C. § 282.

13. The PTO's publicly accessible patent assignment records indicate that inventor Daniel Winn assigned the entire right, title, and interest in the '899 patent to Inolex Investment Corp. As a result, Inolex Investment Corp. owns the entire right, title, and interest in the '899 patent.

14. The '899 patent generally relates to compositions that contain caprylhydroxamic acid and a diol and that can be added to personal care products, such as shampoo, conditioner, body wash, lotion, sunscreen, and other products to provide preservative efficacy, thereby preventing the growth of bacteria, yeast, and mold.

15. Claim 1 of the '899 patent is directed to "[a] preservative composition blend

comprising about 4.5% to about 15% caprylohydroxamic acid or a salt thereof wherein caprylohydroxamic acid is the only hydroxamic acid in the composition blend, and about 7% to about 95.5% of a diol selected from the group consisting of a propanediol, methylpropanediol, a butylene glycol, 1,2-pentanediol, 1,2-hexanediol, caprylyl glycol, 1,2-decanediol, caprylyl glyceryl ether, ethylhexylglycerin, glyceryl monolaurate, glyceryl monocaprate, glyceryl monocaprylate, and combinations thereof." Exhibit A, col. 21:9-18.

16. Inolex, Inc.'s Spectrastat™ CGE Natural MB product, which is covered by at least claims 1-5 of the '899 patent contains 7-8 wt-% of caprylhydroxamic acid, 64.5-70.5 wt-% 1,3-propanediol, and 23-27 wt-% caprylyl glyceryl ether. *See* Exhibit I. Thus, Inolex, Inc.'s Spectrastat™ CGE Natural MB product is one commercial embodiment of at least claim 1 of the '899 patent.

17. Inolex, Inc. launched its Spectrastat™ CGE Natural MB product on July 1, 2022, and it has been offered for sale and sold in the United States, including in this judicial district, since that date.

18. In compliance with 35 U.S.C. § 287, Inolex, Inc. has marked its products that are covered by claims 1-5 of the '899 patent, including its Spectrastat™ CGE Natural MB product. *See* Exhibit C (product bulletin for Inolex's Spectrastat™ CGE Natural MB).

19. Shortly after the '899 patent was issued by the PTO, Inolex published a news release concerning the '899 patent. *See* Exhibit G.

## U.S. Patent No. 11,291,204 B2

20. U.S. Patent No. 11,291,204 B2 ("the '204 patent") is entitled "Preservatives for Cosmetic, Toiletry and Pharmaceutical Compositions," and was issued by the PTO to Inolex Investment Corp. on April 5, 2022. A copy of the '204 patent is attached to this Complaint as

Exhibit B.

21. The PTO thoroughly examined the '204 patent, and it is currently in force and presumed valid. 35 U.S.C. § 282.

22. The PTO's publicly accessible patent assignment records indicate that inventor Daniel Winn assigned the entire right, title, and interest in the '204 patent to Inolex Investment Corp. As a result, Inolex Investment Corp. owns the entire right, title, and interest in the '204 patent.

23. The '204 patent is related to the '899 patent and relates generally to compositions that contain a single alkylhydroxamic acid and a diol that can be added to personal care products, such as shampoo, conditioner, body wash, lotion, sunscreen, and other products to provide preservative efficacy, thereby preventing the growth of bacteria, yeast, and mold.

24. Claim 1 of the '204 patent is directed to "[a] preservative composition comprising (i) a hydroxamic acid or a salt thereof consisting essentially of a single alkylhydroxamic acid or a salt thereof selected from: hexanohydroxamic acid, caprylohydroxamic acid, caprinohydroxamic acid, and laurohydroxamic acid present in a concentration of about 4.5% to about 15%, and (ii) at least one diol present in a concentration of about 7% to about 95.5% selected from the group consisting of: propanediol, methylpropanediol, a butylene glycol, 1,2-pentanediol, 1,2-hexanediol, caprylyl glycol, 1,2-decanediol, caprylyl glyceryl ether, ethylhexylglycerin, glyceryl monolaurate, glyceryl monocaprate, glyceryl monocaprylate, and combinations thereof, wherein the composition is free of parabens." Exhibit B, col. 19:26-39.

25. Inolex's Spectrastat™ CGE Natural MB product is one commercial embodiment of at least claims 1-4 and 9-12 of the '204 patent. *See* Exhibit C.

26. In compliance with 35 U.S.C. § 287, Inolex, Inc. has marked its products that are covered by the claims of the '204 patent, including its Spectrastat™ CGE Natural MB product. *See* Exhibit C at 2.

27. Shortly after the '204 patent was issued by the PTO, Inolex published a news release concerning the '204 patent. *See* Exhibit H.

### Actera's Infringing Product

28. On information and belief, Actera launched its TeraStat™ N product in 2019. A search on Google.com indicates that TeraStat™ N was listed on the website UL Prospector as of April 2019, as shown in the following image:



29. The trade publication cosmeticdesign.com also published an article dated September 15, 2020, concerning TeraStat™ N. *See* https://www.cosmeticsdesign.com/Product-innovations/Actera-s-100-Natural-Broad-Spectrum-Preservative.

30. Attached hereto as Exhibits D, E, and F are product bulletins for Actera's TeraStat™ N product that were published in 2021, 2022, and 2023, respectively.

31. TeraStat™ N contains a mixture of Caprylhydroxamic Acid ("CHA"), Caprylyl Glyceryl Ether ("CGE"), and Propanediol (i.e., 1,3-Propanediol, "PDO"). *See* Exhibits D, E, and F. According to Actera's product bulletins for TeraStat™ N, "[t]he combination of CGE, CHA, and PDO is the most effective, stable, and gentle natural preservative yet." *See* Exhibits D, E, and F.

32. According to Actera's product bulletins for TeraStat™ N, the accused infringing product provides "Clean & Natural Preservation" and is "the first preservation system to use the high performing biostatic agent CGE [i.e., Caprylyl Glyceryl Ether]." Exhibits D, E, and F. Actera informs customers that its TeraStat™ N product is "[s]uitable for all-natural and clean beauty formulations where a single system for broad-spectrum microbial preservation is preferred." Exhibits D, E, and F. Actera also informs customers that its TeraStat™ N product "reliably passes challenge tests in all types of formulation, even at neutral pH," and that TeraStat™ N is "highly efficient against bacteria, yeast, and mold." Exhibits D, E, and F.

33. Actera's product bulletins for TeraStat™ N recommend that the product be added "to the water phase of any cosmetic and personal care formulation" at a level of "1.5 to 2.5%." Exhibits D, E, and F.

34. Actera's product bulletins for TeraStat™ N provide customers with data from four exemplary personal care products: a "Body Lotion" formulated at pH 6.5 and containing 2.0% TeraStat™ N; a "Facial Cream" formulated at pH 6.0 and containing 2.0% TeraStat™ N; a "Facial Cleanser" formulated at pH 6.0 and containing 2.5% TeraStat™ N; and a "Tinted Foundation" that is a water-in-oil emulsion containing 2.0% TeraStat™ N. *See* Exhibits D, E,

and F. All of Actera's product bulletins for TeraStat™ N show that the amount of *S. aureus* bacteria, *E. coli* bacteria, *P. aeruginosa* bacteria, *C. albicans* yeast, and *A. brasiliensis* fungi decreased due to the presence of TeraStat™ N. *See* Exhibits D, E, and F.

      35.     Actera's product bulletins for TeraStat™ N (i.e., Exhibits D, E, and F) include a statement that "For intellectual property purposes, composition contains additional additive hydroxamic acids. See product dossier for full compositional statement," which appears below the INCI name for TeraStat™ N, as shown below:

**INCI**
Caprylyl Glyceryl Ether (and) Caprylhydroxamic Acid (and) Propanediol

- **Caprylyl Glyceryl Ether (CGE)**
  Natural biolipid made from 100% renewable vegetable fatty acid and glycerin.

- **Caprylhydroxamic Acid (CHA)***
  From 100% natural vegetable fatty acid. This molecule is fungistatic.

- **Propanediol (PDO)**
  Fermented natural diol that boosts efficacy of CGE and CHA while reducing irritation.

* For intellectual property purposes, composition contains additional additive hydroxamic acids. See product dossier for full compositional statement.

**Applications**
Suitable for all-natural and clean beauty formulations where a single system for broad-spectrum microbial preservation is preferred.

**Guidelines**
Use level: 1.5 to 2.5%

Recommended procedure: add TeraStat N to the water phase of any cosmetic and personal care formulation.

For clear systems, add 2-15% glycols to optimize solubility.

Suitable for hot and cold processes.

Exhibits D, E, and F, at p. 3 of 4. Thus, according to Exhibits D, E, and F, Actera's TeraStat™ N product contains "additional additive hydroxamic acids." As set forth in the following Paragraphs 36-38 and Exhibit I, this statement is incorrect based on analysis of Actera's TeraStat™ N product.

      36.     Actera's TeraStat™ N product (Lot No. CB23B1) was analyzed by Gas Chromatography with Flame Ionization Detection ("GC-FID"), which showed that Actera's

8

TeraStat™ N product contains approximately 23 wt-% of CGE, approximately 63 wt-% of PDO, and approximately 7.4-7.6 wt-% of CHA. *See* Exhibit I.

37. Analysis of Actera's TeraStat™ N product by GC-FID also indicated the presence of approximately 7-10 wt-% of Glycerin. *See* Exhibit I.

38. Analysis of Actera's TeraStat™ N product by High Performance Liquid Chromatography ("HPLC") showed that CHA is the only alkylhydroxamic acid present in Actera's TeraStat™ N product. *See* Exhibit I. Thus, Actera's statement in its product bulletins for TeraStat™ N, which state that the product contains "additional additive hydroxamic acids" is incorrect because caprylhydroxamic acid is the only hydroxamic acid present in Actera's TeraStat™ N product.

### Actera's TeraStat™ N Product Infringes the '899 Patent

39. Referring to the claim chart set forth in Exhibit J, Actera's TeraStat™ N product meets each and every limitation of at least claims 1-5 of the '899 patent. Therefore, the manufacture, use, offer for sale, and/or sale of Actera's TeraStat™ N product in the United States directly infringes at least claims 1-5 of the '899 patent under 35 U.S.C. § 271(a).

40. Actera's product bulletins for its TeraStat™ N product instructs its customers to use its TeraStat™ N product in personal care formulations in a manner that directly infringes at least claims 7-10 of the '899 patent. *See* Exhibit J. Actera is aware of the '899 patent and specifically instructs its customers to use the TeraStat™ N product in a manner that directly infringes one or more claims of the '899 patent. Thus, Actera's manufacture, offer for sale, and/or sale of its TeraStat™ N product in the United States induces infringement of at least claims 1-5 and 7-10 of the '899 patent under 35 U.S.C. § 271(b).

41. The intended use of Actera's TeraStat™ N product is as a preservative in personal

care formulations, which is also the only substantial commercial use for Actera's TeraStat™ N product. *See* Exhibits D, E, and F. Actera has known and knows its TeraStat™ product is designed for a use that infringes one or more claims of the '899 patent and lacks a substantial non-infringing use. Thus, Actera's manufacture, offer for sale, and/or sale of its TeraStat™ N product in the United States contributes to the direct infringement of at least claims 1-5 and 7-10 of the '899 patent under 35 U.S.C. § 271(c).

### Actera's TeraStat™ N Product Infringes the '204 Patent

42.   Analytical testing of Actera's TeraStat™ N product shows that it meets each and every limitation of at least claims 1-4 and 9-12 of the '204 patent. *See* Exhibit I.

43.   Referring to the claim chart set forth in Exhibit K, the manufacture, use, offer for sale, and/or sale of Actera's TeraStat™ N product in the United States directly infringes at least claims 1-4 and 9-12 of the '204 patent under 35 U.S.C. § 271(a).

44.   Actera's product bulletins for its TeraStat™ N product instructs its customers to use its TeraStat™ N product in personal care formulations in a manner that directly infringes at least claims 5-8 and 13-15 of the '204 patent. *See* Exhibit D, E, F, and K. Thus, Actera's manufacture, offer for sale, and/or sale of its TeraStat™ N product in the United States induces infringement of at least claims 1-15 of the '204 patent under 35 U.S.C. § 271(b).

45.   The intended use of Actera's TeraStat™ N product is as a preservative in personal care formulations, which is also the only commercial use for Actera's TeraStat™ N product. *See* Exhibits D, E, and F. Actera has known and knows its TeraStat™ product is designed for a use that infringes one or more claims of the '204 patent and lacks a substantial non-infringing use. Thus, Actera's manufacture, offer for sale, and/or sale of its TeraStat™ N product in the United

States contributes to the direct infringement of at least claims 1-15 of the '204 patent under 35 U.S.C. § 271(c).

### Actera's Infringement of the Asserted Patents is Willful

46. Actera and its CEO, Mr. Daniel Winn, are aware of the Asserted Patents. *First*, Actera's CEO, Mr. Daniel Winn, is the sole named inventor of the Asserted Patents and was employed by Inolex prior to founding Actera in 2017. Shortly after founding Actera, Mr. Winn launched the TeraStat™ N product, which is based upon technology that Mr. Winn contributed to while he was employed by Inolex.

47. Actera is a direct competitor of Inolex in the field of all-natural preservatives for personal care products, and Actera developed its TeraStat™ N product based on work that Mr. Winn did at Inolex.

48. Actera's goal in launching its TeraStat™ N product was to take sales from Inolex.

49. Upon information and belief, Actera regularly surveys the patent literature—and especially that of its competitors—for relevant patents and would have encountered the Asserted Patents.

50. Inolex also issued press releases announcing the issuance of the Asserted Patents. *See* Exhibits G and H.

51. Actera updated its product bulletin for TeraStat™ N in 2022, after the issuance of the '899 patent to include the statement "For intellectual property purposes, composition contains additional active hydroxamic acids. See product dossier for full compositional statement." *See* Exhibits D, E, and F. As noted above, claim 1 of the '899 patent requires, *inter alia*, "about 4.5% to about 15% caprylohydroxamic acid or a salt thereof, wherein caprylohydroxamic acid is the only hydroxamic acid in the composition blend." Exhibit A, col.

21:9-12. Therefore, the statement that "additional hydroxamic acids" (other than CHA) are present in TeraStat™ N clearly indicates that Actera was and is aware of Inolex's Asserted Patents. And while the statement in Exhibits D, E, and F "[f]or intellectual property purposes" may appear to be an attempt to design-around Inolex's '899 patent, analytical testing of Actera's TeraStat™ N product revealed that there are no "additional hydroxamic acids" present in any detectable amount(s) and this statement is false. *See* Exhibits I and J.

52. In sum, Actera plainly was and is aware of the Asserted Patents and has included false statements in its product bulletins for TeraStat™ N to mislead Inolex and the public to believe that its TeraStat™ N product does not infringe the Asserted Patents.

## COUNT I
**(Infringement of the '899 Patent Under 35 U.S.C. § 271(a), (b), and/or (c))**

53. Paragraphs 1-52 are incorporated herein as set forth above.

54. Actera has infringed at least claims 1-5 of the '899 patent under 35 U.S.C. § 271(a) by manufacturing, offering for sale, selling, and/or using its TeraStat™ N product in the United States prior to the expiration of the '899 patent.

55. Inolex seeks a judgment under 35 U.S.C. § 271(a) that Actera directly infringes one or more claims of the '899 patent by the manufacture, offer for sale, sale and/or use of its TeraStat™ N product.

56. Actera has actual knowledge of the '899 patent.

57. Actera has indirectly infringed at least claims 1-5 and 7-10 of the '899 patent under 35 U.S.C. §§ 271(b) and/or (c) by selling and/or using its TeraStat™ N product in the United States prior to the expiration of the '899 patent.

58. Inolex seeks a judgment under 35 U.S.C. § 271(b) that Actera induces its customers to directly infringe one or more claims of the '899 patent by the sale and/or use of its

12

TeraStat™ N product with instructions for the use of its TeraStat™ N product in personal care products.

59. Inolex seeks a judgment under 35 U.S.C. § 271(c) that Actera contributes to the infringement of one or more claims of the '899 patent by the sale and/or use of its TeraStat™ N product for use in personal care products.

60. Inolex has been and continues to be damaged by Actera's infringement of the '899 patent.

61. Inolex has suffered and continues to suffer irreparable harm with no adequate remedy at law unless this Court enjoins Actera and its agents, servants, employees, attorneys, representatives, and all other acting on their behalf from infringing the '899 patent.

62. The balance of hardships favors an injunction, and such injunction would not disserve the public interest.

63. Actera's infringement has been and continues to be deliberate, willful, and unlicensed, permitting Inolex to seek enhanced damages under 35 U.S.C. § 284.

64. Because Actera's infringement has been and continues to be deliberate, willful, and unlicensed, Inolex is entitled to seek its attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT II
**(Infringement of the '204 Patent Under 35 U.S.C. §§ 271(a), (b), and/or (c))**

65. Paragraphs 1-64 are incorporated herein as set forth above.

66. Actera has infringed at least claims 1-4 and 9-12 of the '204 patent under 35 U.S.C. § 271(a) by manufacturing, offering for sale, selling, and/or using its TeraStat™ N product in the United States prior to the expiration of the '204 patent.

67. Inolex seeks a judgment under 35 U.S.C. § 271(a) that Actera directly infringes one or more claims of the '204 patent by the manufacture, offer for sale, sale and/or use of its TeraStat™ N product.

68. Actera has actual knowledge of the '204 patent.

69. Actera has indirectly infringed at least claims 1-15 of the '204 patent under 35 U.S.C. §§ 271(b) and/or (c) by selling and/or using its TeraStat™ N product in the United States prior to the expiration of the '204 patent.

70. Inolex seeks a judgment under 35 U.S.C. § 271(b) that Actera induces its customers to directly infringe one or more claims of the '204 patent by the sale and/or use of its TeraStat™ N product with instructions for the use of its TeraStat™ N product in personal care products.

71. Inolex seeks a judgment under 35 U.S.C. § 271(c) that Actera contributes to the infringement of one or more claims of the '204 patent by the sale and/or use of its TeraStat™ N product for use in personal care products.

72. Inolex has been and continues to be damaged by Actera's infringement of the '204 patent.

73. Inolex has suffered and continues to suffer irreparable harm with no adequate remedy at law unless this Court enjoins Actera and its agents, servants, employees, attorneys, representatives, and all other acting on their behalf from infringing the '204 patent.

74. The balance of hardships favors an injunction, and such injunction would not disserve the public interest.

75. Actera's infringement has been and continues to be deliberate, willful, and unlicensed, permitting Inolex to seek enhanced damages under 35 U.S.C. § 284.

76. Because Actera's infringement has been and continues to be deliberate, willful, and unlicensed, Inolex is entitled to seek its attorneys' fees and costs under 35 U.S.C. § 285.

## JURY TRIAL DEMAND

77. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Inolex respectfully requests the following relief:

A. That Judgment be entered that Actera has infringed and is infringing the Asserted Patents;

B. That the Court enter a permanent injunction enjoining Actera, its officers, employees, agents, and all others acting in concert with them or participating with them from further acts that infringe the Asserted Patents;

C. That Actera be ordered by this Court to account for and pay to Inolex damages adequate to compensate Inolex for Actera's infringement of the Asserted Patents;

D. That the Court treble the damages for Actera's willful infringement of the Asserted Patents;

E. That the Court award pre-judgment interest on the damages;

F. A Judgment be entered that this case is exceptional, and that Inolex is entitled to its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G. Costs and expenses in this action; and

H. Such other and further relief as the Court may deem just and proper.

Dated:  April 11, 2024

Respectfully submitted,

*/s/ Kaan Ekiner*
Kaan Ekiner (#5607)
**COZEN O'CONNOR**
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com

*Of Counsel:*

W. Blake Coblentz (*pro hac vice* to be filed)
**COZEN O'CONNOR**
1200 19th Street, N.W.
Washington, DC 20036
(202) 912-4800
wcoblentz@cozen.com

*Attorneys for Plaintiffs Inolex, Inc. and Inolex Investment Corp.*